## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 07-81027-CIV-RYSKAMP/VITUNAC

JEFFREY HAP and KAREN HAP,

       Plaintiffs,

v.

TOLL JUPITER LIMITED PARTNERSHIP,
a Florida limited partnership, TOLL FL GP
CORP, a Florida corporation, and TOLL
BROTHERS, INC., a Delaware corporation

       Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

THIS CAUSE comes before the Court upon defendants' motion to dismiss the second amended complaint **[DE 55]** filed on August 8, 2008.  Plaintiffs responded **[DE 61]** on September 2, 2008.  Defendants replied **[DE 64]** on September 18, 2008.  This motion is ripe for adjudication.

**I.    Introduction**

This is a civil action filed by plaintiffs alleging both state and federal causes of action arising out of the purchase and sale of real property.  Accordingly, this suit is properly brought pursuant to this Court's federal question under the Interstate Land Sales and Full Disclosure Act, and supplemental jurisdiction under 28 U.S.C. § 1331. Venue is proper as the real estate parcel is located in Jupiter, Florida.  28 U.S.C. § 1391(c).  The following facts are based on plaintiff's allegations contained in their second amended complaint **[DE 45].**

On June 30, 2006 plaintiffs and defendants entered into a contract, termed "the

Agreement" wherein plaintiffs agreed to purchase a parcel of land and a residence in Jupiter

Country Club that defendants promised to build.  Pursuant to the terms of the Agreement, the full

price of the lot and home was $1,553,800.00.  Plaintiffs paid a cash deposit of $105,000.00,

additional money for upgrades totaling $9,387.00 and signed a promissory note for $65,998.00.

All totaled, plaintiffs made a $180,385.00 deposit for the land and future home.  Plaintiffs argue

that the terms of the Agreement are unclear and therefore seek declaratory relief from this Court.

They argue that the Agreement and note should be cancelled and that this Court should award

them damages and attorney's fees.  To this end, plaintiffs seek declaratory relief regarding the

application of the Interstate Land Sales and Full Disclosure Act (ILSA) and regarding the

formation of the contract (counts I and VIII), repudiation of the agreement (count IX), and allege

violations of: ILSA (count II), sections 720.401, 498.022, 498.023 and 498.028 of the Florida

Land Sales Practices Act (LSPA) (counts III, IV, V, and VI, respectively), and the Florida

Deceptive and Unfair Trade Practices Act (FDUTPA) (count VII).  Defendants argue that this

Court should dismiss the complaint in its entirety.

 In regards to counts four, five and six, the Florida legislature repealed the LSPA, on July

1, 2008.  Under Florida law, when a statute that provided for a purely statutory right is repealed

without reenactment the statute is treated as if it never existed.  *Bureau of Crimes Compensation,*

*Dept. of Labor and Employment Sec. v. Williams*, 405 So.2d 747, 748 (Fla. 2nd D.C.A. 1981).  As

such, counts four, five and six are dismissed with prejudice.

II.     **Discussion**

        A.      **Standard of Law on Motion to Dismiss**

        A court should only grant a motion to dismiss for failure to state a claim "when the

movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also* Fed. R. Civ. P. 12(b)(6).  A motion to dismiss merely tests the sufficiency of the complaint; it does not decide the merits of the case.  *See Wein v. American Huts, Inc.*, 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004).  Moreover, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The rules "do not require a claimant to set out in detail the facts upon which he bases his claim.  To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S.41, 47 (1957).

This Court notes that on May 21, 2007 the Supreme Court in *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (U.S. 2007), departed from *Conley* and reintroduced elements of fact-pleading.[1] The Court held that in order to give substance to a defendant's right to fair notice, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 1965.  Fair notice does not require detailed factual allegations. *Id.*  Rather, it requires factual allegations that "raise a reasonable expectation that discovery will reveal evidence" in support of the claim.  *Id.*  In other words, factual allegations made must "be enough to raise a right to relief above a speculative level[.]"  *Id.*  The Court explained  "we do

---

[1]In reference to *Conley's* "no set of facts" language, the *Bell Atlantic* Court stated "after puzzling the profession for 50 years, this famous observation has earned its retirement.  The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1969 (U.S. 2007).

not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id* at 1974. Thus, the new touchstone of complaint sufficiency is not possibility but rather plausibility – whether the factual allegations "plausibly suggest . . . that the pleader is entitled to relief." *Id.*

When considering a motion to dismiss, a court must accept the well-pled facts in the complaint as true and construe them in the light most favorable to the plaintiff. *Beck v. Deloitte & Touche et al.*, 144 F.3d 732, 735 (11th Cir. 1998). As the Eleventh Circuit has noted, "the threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995) (quotations omitted). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action. *See Wein*, 313 F. Supp. 2d at 1359.

<u>*Exhibits to the Second Amended Complaint*</u>

To determine whether the complaint contains sufficient factual allegations, courts must look at the complaint and the supporting documents submitted with the complaint. Fed. R. Civ. P. 10; *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Solis-Ramirez v. U.S. Dept. of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985). If there is a conflict between the complaint and supporting documents, the information contained in the supporting documents controls. *Day*, at 1276. If the plaintiff fails to attach a crucial document to the complaint a defendant may include that document with its motion to dismiss, but the Court's consideration of that document may convert the motion into one for summary judgment. *Trustmark Ins. Co. v. ESLU Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002).

A document attached as an exhibit to a motion to dismiss "may be considered by the court without converting the motion to dismiss into one for summary judgment if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). A document is undisputed if its authenticity is not challenged. *Id*. Here, defendants attached the "Affiliated Business Arrangement Disclosure Statement" (Disclosure), Receipt of Country Club Membership documents and the Homeowner's Association Operating Budget to their motion to dismiss. Plaintiffs did not dispute the authenticity of the documents.

Paragraph 18i of the Agreement states "Buyer acknowledges Buyer's receipt of Seller's Affiliated Business Disclosure and understands that Buyer has the right to select the mortgage lender and title company for Settlement." The disclosure expounds upon that right and includes both plaintiffs' signature stating that they understood their rights. Accordingly it is essential to plaintiffs' claims.

Likewise, in exhibit H to the Agreement, plaintiffs were informed that they were obligated to maintain membership in the Homeowner's Association and the Country Club. Defendants seek this Courts consideration of two related documents that plaintiffs did not attach to the complaint: the Homeowner's Association Estimated Operating Budget and the receipt for club membership documents. These documents are central to multiple counts in the complaint. Thus, this Court will consider the documents in deciding the motion and will not convert this motion into one for summary judgement.

**B.    The Agreement Exempts Compliance with ILSA**

Defendants argue that they need not comply with ILSA because they agreed to complete

construction of the home within two years.  A seller is exempt from ILSA if the seller agrees to

"the sale ... of land under a contract obligating the seller ... to erect [a residential] building

thereon within a period of two years[,]"so long as the seller does not make such an agreement to

evade the statute. 15 U.S.C. § 1702(a)(2).

Federal law governs interpretation of ILSA.  *See*, *Sola Electric Co. v. Jefferson Electric

*Co.*, 317 U.S. 173, 176, S.Ct. 172, 174 (1942); *In re Prudential Florida Leasing, Inc.*, 478 F.3d

1291, 1298 (11th Cir. 2007).  The Department of Housing and Urban Development ("HUD") has

issued guidelines as to the meaning of the word "obligate."  These guidelines, as interpretative

agency rules, are entitled to "great deference."  *Winter*, 777 F.2d at 1448.  According to HUD,

"[t]he contract must not allow nonperformance by the seller at the seller's discretion."  Guidelines

for Exemptions Available Under the Interstate Land Sales Full Disclosure Act, 61 Fed. Reg.

13596, 13603 (Mar. 27, 1996) ("Guidelines").  "Contracts that permit the seller to breach

virtually at will are viewed as unenforceable because the construction obligation is not an

obligation in reality."  *Id*.

Although the Guidelines are entitled to deference, the ultimate determination of whether

the Agreement obligates the seller to construct the residence within two years is a question of

state contract law.  *Guidelines*, 61 Fed.Reg. at 13603 ("Because of the variations in applicable

contract law among the states and the many different provisions…used by sellers in construction

contracts, HUD may condition its advisory opinions regarding this exemption on representations

by local counsel as to the current status of state law on the relevant issues.").

The Florida Supreme Court held in *Samara Development Corp. v. Marlow*, 556 So.2d

1097, 1100 (Fla. 1990), that "the obligation [to construct in two years] must be unrestricted and

the contract must not limit the purchaser's right to seek specific performance or damages."

Paragraph ten of the Agreement states, "[n]otwithstanding anything to the contrary in this Agreement, in the event that Seller fails to complete construction of the Premises within two (2) years of the date of Buyer's execution of this Agreement (the "Outside Settlement Date"), then Buyer shall have all remedies available to Buyer at law and in equity without limitation." Plaintiffs agree that standing alone, this provision would exempt defendants from the ISLA. Plaintiffs argue that the Agreement, however, contains other provisions that conflict with and render this exemption illusory. Specifically, plaintiffs point to paragraphs seven, ten, eleven and twelve.

Taken together, plaintiffs allege that the two year completion requirement in paragraph ten is illusory because these paragraphs require notice of default and time to cure the default, either seven days or a reasonable time. They also argue that by excluding specific remedies in these provisions buyers are misled into thinking that these exclusions also apply to the ILSA exemption in paragraph ten.

A basic tenant of contract law provides that courts should give each provision of a contract meaning and any inconsistencies should be reconciled if possible. *Therrien v. Larkins*, 959 So.2d 365, 367 (Fla. 5th D.C.A. 2007). It is only "where a contract contains mutually repugnant clauses that actually conflict does an ambiguity exist." *Harris v. School Bd. Of Duval County*, 921 So.2d 725, 734 (Fla. 1st D.C.A. 2006). Thus, to the extent there is a conflict in the Agreement, this Court has a duty to construe it in a matter that gives effect to each provision, to the extent possible. But defendants argue that none of the terms are in conflict and that the ILSA exception language is unequivocal. Defendants argue that paragraphs seven, eleven and twelve

do not concern construction or closing and therefore address issues outside the scope of the ILSA exception language in paragraph ten.  This Court agrees.

Paragraph seven is titled "DEFAULT"and addresses the consequences if the buyer or seller does not comply with the terms of the Agreement.  Specifically, if the seller defaults *before* the two year completion date explained in paragraph ten, is given written notice, and the default continues for an additional seven days thereafter, the Agreement is void and seller must return to the buyer any payments made on the purchase price and any extras.[2]  This paragraph addresses the remedy available if the seller defaults *less* than two years after the buyer executed the Agreement.  Paragraph ten, of course, explains a buyer's recourse if the seller fails to complete the property *more* than two years after execution of the Agreement.  Accordingly, no conflict exists.

Plaintiffs also argue that the language of paragraph ten is itself contradictory and shows that defendants were trying to trick consumers into believing that the remedies were limited to the termination of the Agreement and the return of all sums paid.  Plaintiffs, however, misread paragraph ten.  Paragraph ten states that if the construction is not substantially completed within eighteen months after acceptance, then the buyer can choose to terminate the Agreement whereupon defendants would refund any payments already made.  Termination of the Agreement and return of payments made are not permitted even if construction is not substantially completed within eighteen months, if the delay is caused by circumstances outside of the seller's control. The second part of paragraph ten states that if the home is not completed within two years after

---

[2] ILSA only regulates a sellers' failure to construct within two years.  Thus, the provisions in this paragraph of the Agreement concerning the buyer's default are irrelevant.

acceptance, then the buyer has all remedies at law an equity. There are no limitations to this part of the clause whatsoever, not even for delays caused by circumstances outside of the seller's control.

ILSA only requires that a builder complete construction within two years for the exemption to apply.  Paragraph ten complies with that requirements unequivocally and even adds an additional layer of consumer protection by permitting a purchaser to terminate the Agreement if the home is not substantially completed within eighteen months.  This is not contradictory or confusing.

Paragraph eleven is titled "REMEDIES AND WARRANTIES" and acknowledges that the seller provided the buyer with a ten year limited warranty, as outlined in related documents to which buyers acknowledged receipt.  All other warranties are excluded.  The seller's liability under the limited warranty, the Agreement, or arising from the construction, delivery, sale or condition of the premises is limited to repair pursuant to the terms of the limited warranty.  This paragraph explains that the seller will provide a ten year limited warranty on the construction of the home.  The limited remedies provided in this paragraph relate to construction defects and entitle the buyer to repairs in accordance with the standards established in the limited warranty.  Again, no conflict exists.

Paragraph twelve is titled "ARBITRATION" and requires that buyer first give seller written notice of each claim mailed to the attention of the "Warranty Dispute Resolution" department as well as a reasonable time to cure any default.  After notice and time to cure, buyer must resolve the dispute in arbitration.  Arbitration is required for any disputes including those disputes arising out of the condition of the premises, the Agreement, the limited warranty or the

construction or condition of the house.  Like the paragraph eleven, this paragraph addresses issues outside of the ILSA exemption language.  This language indicates to the buyer that when there is a dispute regarding the actual construction of the home, as opposed to the timeliness of delivery, plaintiffs are required to arbitrate the claim.  Most telling is the requirement that plaintiffs mail notices of breach to the warranty dispute resolution department.  Since paragraph twelve does not speak to the seller's default in making a timely delivery, no conflict exists.

In addition to the fact that paragraphs seven, eleven and twelve discuss issues outside the scope of paragraph ten, the language in paragraph ten is unequivocal in requiring construction within two years and explicitly explains that the buyer retains all rights provided at law and in equity in the event that the seller fails to deliver the house within two years.

Finally, plaintiffs suggest that the formatting of the Agreement proves that defendants fraudulently intended to evade ILSA and that therefore the exemption should not apply.  They argue that the font size of the text in paragraph ten is smaller than other provisions in the Agreement.  They also argue that placing the two year exemption language at the end of paragraph ten, as opposed to placing it in the paragraphs addressing remedies or default was done to deceive consumers.  First, the font size of every paragraph in the Agreement is the same.  Moreover, nearly every paragraph is presented in an identical format.  Each numbered paragraph begins with the name of the paragraph in bold and caps followed by the content of the paragraph in an uniform reasonably sized print.  Paragraphs eleven, twelve and eighteen do differ from other paragraphs in that those paragraphs contains words emphasized by bold print and or capital letters.  To argue that the content of paragraph ten is somehow hidden by these paragraphs is unavailing since only three out of eighteen paragraphs included emphasized lettering.  In regards

to the placement of the ILSA exclusion in the second portion of paragraph ten, this Court likewise holds that plaintiff has failed to state a claim.  As this Court has already explained, the content of the other paragraphs addressed issues outside of ILSA's purview.  As such, it would have been inappropriate to include that exclusion elsewhere.  Paragraph ten offered two protections to the buyer.  The first clause requires substantial completion within eighteen months.  Logically, it would follow that the second portion of the paragraph would address failure to deliver the completed home within two years.  There is nothing in the Agreement to suggest that defendants fraudulently intended to evade ILSA.  As such, the Agreement is exempt from ILSA and counts one and two are dismissed without leave to amend.

### C.  Homeowner's Association Disclosure

Section 720.401 of the Florida Statutes requires that a seller present a buyer with a disclosure summary before executing a sales contract when the parcel is located in a community subject to a homeowner's association.  The statute requires that the summary provided to the buyer be substantially similar to the form provided in the statute.

Plaintiffs first allege that defendants modeled their disclosure, Appendix H to the Agreement, after a repealed predecessor statute, §689.26, and as a result, the disclosure is not made in a summary format and essential terms were omitted.  In 1995, the legislature substantially changed the content of what was then §689.26 and for the first time added a disclosure form to the statute.  Sellers were required to provide buyers with a form substantially similar to the form provided in the statute.  In 2004, the legislature made minor amendments to the statute and changed the number to §720.401.  None of the amendments made subsequent to the 1995 amendments substantially changed any substantive provisions of the law or the

disclosure form.  Plaintiffs, however, argued that the 2004 amendment was a substantial change to the statute, arguing that the legislature deemed the difference between the two statutes sufficiently important to repeal one and enact the other.  This Court finds plaintiffs' argument to be a mischaracterization of the law and the legislative intent.  The legislature simply renumbered the statute without making any substantive changes.  Thus, the substance of the law was not changed nor was the law actually repealed.  Accordingly, this Court finds plaintiffs' argument unpersuasive.

Plaintiffs also argue that defendants omitted essential information contained in paragraphs three through seven and paragraph nine of the statutory disclosure statement. Defendants argue that the statute only requires substantial similarity between the statute and the disclosure used and that plaintiffs' point to "hyper technical and subtle variations" which do not constitute failure to comply with the statute.  This Court agrees.

The Florida Supreme Court held that when a statute provides a form and requires substantial compliance, or in this case, substantial similarity, a party has complied with the statute if the purpose of the statute is accomplished by the actual form used.  *Seaboard Air Line R. Co. v. Holt*, 80 So.2d 354, 357 (Fla. 1955) *see also*, *Miami Dolphins, Ltd. v. Metro. Dade County*, 394 So.2d 981, 986-87 (Fla. 1981)(finding substantial similarity even though "one might argue that [the statutory language] is a clearer, more dispositive choice of words than [the language used]"); *Lamar Advertising Co. v. Dept. of Transp.*, 523 So.2d 712, 713 (Fla. 1st D.C.A. 1988)(finding substantial similarity where the phrase "final agency action" was not included but, the context of the notice otherwise sufficiently notified plaintiff of its rights); *Gazelle v. Winn-Dixie Stores, Inc.*, 476 So.2d 710, 711-12 (Fla. 1st D.C.A. 1985)(relying on legislative intent

when finding no substantial compliance with statutory form).

Paragraph three of the statutory form provides:

3.       YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE
ASSOCIATION.  ASSESSMENTS MAY BE SUBJECT TO PERIODIC
CHANGE.  IF APPLICABLE, THE CURRENT AMOUNT IS $____ PER ___.
YOU WILL ALSO BE OBLIGATED TO PAY ANY SPECIAL ASSESSMENTS
IMPOSED BY THE ASSOCIATION.  SUCH SPECIAL ASSESSMENTS MAY
BE SUBJECT TO CHANGE.  IF APPLICABLE, THE CURRENT AMOUNT IS
$ ___ PER ___.

Plaintiffs argue that defendants disclosure does not comply with §720.401 in two

respects: first, because defendants failed to list the current amount of assessments and the time

period covered by the assessments; and, second, because the disclosure does not state that the

buyer must pay special assessments imposed by the association.

In regard to the first allegation, the statute requires a seller to list the amount and time

period of an assessment "if applicable."  Nevertheless, defendants note that section B of the

disclosure, titled "Jupiter Country Club Charges, Association Assessments" does list the amount

of charges and the time period covered by those charges.  The disclosure states "Amount due at

closing $1316.12, plus current quarter prorated."  Defendants argue that the current amount was

$1316.12, to be paid quarterly.  This Court holds that, although not located in the same paragraph

as the statutory form, defendants provided the same information in another part of the document.

This is sufficient to satisfy substantial compliance with the statute.

In regard to the second allegation, defendants recognize that the disclosure does not

mention special assessments but argues that the language discussing assessments generally in

paragraph three and section B of the disclosure are sufficient.  This Court agrees.  The buyer was

notified that it was responsible for paying all assessments, which includes regular and special

assessments.

Paragraph four of the statutory disclosure statement provides:

    4.      YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR SPECIAL DISTRICT.  ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.

Plaintiffs argue that the disclosure recognizes special assessments from the Northern Palm Beach County Improvement District (NPBCID) but fails to list other possible municipal or county assessments.  Paragraph eight of the disclosure states that the assessments for the NPBCID are "in addition to county and all other taxes and assessments provided for by law."  This is sufficient to comply with the law.  Plaintiffs argue that defendants should be required to list each government entity that may levy a special assessment.  The exact language of the statute does not go that far.

Paragraph five of the statutory form provides:

    5.      YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.

Plaintiffs argue that the disclosure is not substantially similar to the statute because it does not mention that failure to pay assessments levied by a homeowners' association could result in a property lien.  Paragraph three of the disclosure states that the buyer was obligated to pay homeowners' association assessments.  Paragraph four states that failure to pay assessments could result in a lien on the property.  Taken together, these paragraphs provide the same information outlined in paragraph five of the statutory form.  As such, defendants have complied with the statute.

Paragraph six of the statutory form provides:

6.      THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES
        FOR RECREATIONAL OR OTHER COMMONLY USED FACILITIES AS AN
        OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION.
        IF APPLICABLE, THE CURRENT AMOUNT IS $ ___ PER ___.

Plaintiffs argue that defendant omitted the amount and time period covered by each

payment, the same argument plaintiffs made in relation to paragraph three of the statutory form.

As already explained, the statute requires the seller to provide the amount and time frame "if

applicable."  In this case, defendants notified plaintiffs that they were responsible for paying

annual dues, but explained that the amount of the dues were "subject to periodic change."  Thus,

the exact amount of the fees was "not applicable" and therefore not required to be disclosed.

Paragraph seven of the statutory form provides:

7.      THE DEVELOPER MAY HAVE THE RIGHT TO AMEND THE
        RESTRICTIVE COVENANTS WITHOUT THE APPROVAL OF THE
        ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL
        OWNERS.

Plaintiff argues that defendants disclosure is not substantially similar to the statutory form

because defendants did not specifically state that the developer may amend restrictive covenants.

Defendants disclosed that the "restrictive covenants can be amended without the approval of each

member of the association."  This is similar to the statutory language.  The fact that the

developer, or another entity, may direct the change is irrelevant as the result would remain the

same: restrictive covenants could be amended without the consent of each member of the

homeowners' association.  To the extent that plaintiffs argue that the disclosure fails to mention

that "the amendments may be made without approval of the association or the parcel owners[,]" a

careful reading of paragraph five of the disclosure statement shows that argument to be baseless.

Paragraph nine of the statutory form provides:

9.    THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT RECORDED AND CAN BE OBTAINED FROM THE DEVELOPER.

Plaintiffs' argument that paragraph six of the disclosure fails to mention that the documents can be obtained from the developer is also baseless.  A cursory reading of the statute shows that the documents are either public or retained by the developer.  Since plaintiffs' documents are public, the disclosure need not inform plaintiffs that if the documents were not made public, that plaintiff could obtain the documents from the developer.

Finally, in accordance with paragraph eight of the statutory form, paragraph nine of the disclosure reads "[t]he statements contained in this disclosure form are only summary in nature, and, as a prospective purchaser, you should refer to the association governing documents."  The legislature intended for the disclosure to act as a summary of important points addressed in other documents.  The disclosure summary is important because it ensures that buyers understand the extent of their liabilities when purchasing a home in a development.  That said, the legislators were clear that a buyer must review the contract and associated documents to ensure that he understood each element of the agreement.  Since the disclosure need not be identical to the statutory form, and in light of the fact that this document is intended to be a summary, count III is also dismissed without leave to amend.

### D.  FDUTPA

Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) was enacted to protect the public and businesses from those engaging in unfair, unconscionable or deceptive competition or practices in commerce or trade.  Fla. Stat. Ann. § 501.202(2).  While a deceptive practice is likely to mislead consumers, an unfair practice offends public policy and is immoral, unethical,

oppressive, unscrupulous or substantially injurious to consumers. *Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla. 2nd DCA 2006). Plaintiffs seek all damages allowed by law under this count. *See*, § 501.211(2)(allowing recovery of actual damages and attorney's fees and costs).

To bring a cause of action under FDUTPA, one must show: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Id*. An adequate claim must allege sufficient facts to show each of the above elements. *Tuckish v. Pompano Motor Co.*, 337 F.Supp.2d 1313, 1320 (S.D.Fla. 2004). Defendants allege that plaintiffs have failed to allege a deceptive or unfair practice. Since FDUTPA requires proof of these elements, plaintiffs must plead sufficient facts showing that the unfair or deceptive practice that defendants allegedly committed actually resulted in damage. *Shibata v. Lim*, 133 F.Supp.2d 1311, 1317 (M.D.Fla. 2000).

FDUTPA can be violated in two ways: (1) a *per se* violation premised on the violation of another law proscribing unfair or deceptive practice and (2) adopting an unfair or deceptive practice. Fla. Stat. §§ 501.204(1), 501.203(3). Plaintiffs first argue in their response that defendants' violations of ILSA and Florida Land Sales Practices Act constitute a *per se* FDUTPA violation. Since this Court holds that defendants did not violate those statutes, no *per se* violation has occurred.

The Court notes that plaintiffs did not allege a *per se* violation pursuant to FLSPA in the complaint. They did, however, allege a *per se* violation of the Federal Trade Commission Act because defendants allegedly failed to disclose that they contracted with another business to provide a title insurance policy, for which defendants were paid. Plaintiffs also allege that defendants told them that the title insurance would be provided "at cost" to induce plaintiffs to use the affiliated title insurance company.

The Affiliated Business Arrangement Disclosure Statement provided as an exhibit to this motion contradicts each of plaintiffs' allegations.  First, the disclosure clearly was given to plaintiffs as their signature appears at the bottom of the document.  Second, the disclosure recommends that plaintiffs use three companies: a mortgage company, title company and insurance company.  Defendants state in the disclosure that "Toll Brothers, Inc. has a business relationship with these companies.  Specifically, these three companies are subsidiaries of Toll Brothers."  The disclosure further states that plaintiffs are not required to use these companies and are encouraged to "shop around."  The disclosure also states that because of Toll Brothers' relationship with the affiliated businesses, "this referral may provide Toll Brothers or its affiliates a financial or other benefit."  Finally, nothing in the disclosure or the Agreement indicates that the insurance would be provided "at cost."

Also not alleged in the complaint, is plaintiffs argument that defendants violated Florida Statues §§ 626.9541.  This argument was first raised in their response to this motion.  Since even under a liberal reading of the complaint this violation is not alleged, the Court will not consider it here.

### E.  Executive Endorsement

Plaintiffs next argue that they are unsure whether a contract was actually formed since no officer or director signed the endorsement.  Plaintiffs argue that this could be seen as a rejection of the offer or as a counteroffer.  Paragraph eight of the Agreement states that the "Agreement will not be binding upon Seller unless executed by an officer of Seller within 60 days[.]" Plaintiffs signed the Agreement on June 30, 2006.  The president of Toll Brothers signed the agreement on July 13, 2006.

There was also an endorsement to the agreement of sale, which was initialed by a project manager on July 12, 2006.  The Endorsement states that it is "intended to be incorporated into and made a part of the Agreement and all other terms and conditions contained in the Agreement[.]" As such, the president's signature on the Agreement constitutes acceptance.  Since the formation of the contract is clear, count VIII s dismissed.

**F. Repudiation**

Finally, plaintiffs allege that defendants repudiated the contract by assuming that plaintiffs breached the contract and by imposing additional requirements on plaintiffs to respond to defendants' belief that plaintiffs had repudiated.

On May 17, 2007, plaintiffs counsel wrote defendants and stated, "[u]pon my review of the AGREEMENT OF SALE, I have determined some glaring deficiencies which make the contract obligations of the parties illusory, lacking in mutuality, voidable and unenforceable. More specifically, I challenge the validity of this contract due to its failure to comply with [state and federal laws]."  Counsel went on to explain the alleged violations and then stated, "[t]he proposal I am making is for my clients to get their cash deposit back, cancel the Note, terminate the contract and execute a confidentiality and non-disclosure agreement with regard to any of the legal issues raised in this correspondence ... I am optimistic we will conclude this matter without resorting to the Courts[.]"

Toll Brothers responded by letter on June 11, 2007 stating that it

denies your claim that the Agreement of Sale is revocable or void ... Your letter indicates that the Haps may not close as required by the Agreement. Toll Jupiter ... will deem your May 18, 2007 correspondence to be an anticipatory repudiation by the Haps unless appropriate assurances are given to Toll Jupiter ... within seven days that they will honor the Agreement of Sale ... we urge the Haps to provide such assurance forthwith[.]

Plaintiffs never responded to the letter.  Plaintiffs now argue in their response that the letter constituted a settlement offer and that plaintiffs never indicated that they would not preform under the contract.  The letters coupled with plaintiffs' actions, however, show otherwise.

Anticipatory repudiation occurs when one party unequivocally and absolutely refuses to perform the contract.  *Progressive Exp. Ins. Co., Inc. v. Menendez*, 979 So.2d 324, 329 (Fla. 3rd D.C.A. 2008).  While it is true that plaintiffs never explicitly stated that they did not intend to close as required by the Agreement, the letter stated that the contract was void and unenforceable.  They then made a settlement offer and stated that they would initiate a lawsuit if defendants did not accept the offer.  Nothing in the letter indicated that plaintiffs intended to honor the contract.

In response, defendants wrote a letter providing that they understood the letter to be an anticipatory  repudiation of the agreement.  Defendants requested that plaintiffs respond within seven days.  Had plaintiffs intended to honor the agreement, they could have easily written back and explained, as they do now, that the letter did not constitute an anticipatory repudiation, but rather a proposal for settlement.  Plaintiffs did not take this simple step.

After reading the letters, and considering plaintiffs' failure to respond to defendants' letter, this Court agrees that defendants' letter does not constitute repudiation of the contract.  As such, count IV is dismissed.

### III. Conclusion

The Court has carefully reviewed the motion and the pertinent portions of the record and based on the foregoing reasons, it is hereby,

ORDERED AND ADJUDGED that:

(1)      Defendants' Motion to Dismiss **[DE 55]** is GRANTED;

(2)      Counts one, two, three, four, five, six, seven, eight and nine are dismissed with
prejudice and without leave to amend.

(3)      Final judgment will be entered by separate order.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 27 day of

January, 2009.


                                             __/s/ Kenneth L. Ryskamp____
                                             KENNETH L. RYSKAMP
                                             UNITED STATES DISTRICT JUDGE

Copies provided to:
All counsel of record